Good morning, Judge Gould, Judge Fischer, Judge Bea, Mr. Pfeiffer, Matthew McHenry appearing on behalf of the appellant and defendant, Mr. Ruiz. I would like to reserve one minute for a rebuttal. Counsel, I won't take this out of your time. Just generally, if you're not familiar, the clock is up there, a digital clock that records your time, and if you care to reserve time as counsel just did, let me know. I'll help you watch the clock. We'll try and let you reserve your time. Thank you, Your Honor. That's on my nickel. Fair enough. Now, as the court knows from the briefings in this case, the central issue in this case is the permissibility of a warrantless seizure and search of a zippered case that was taken from a shelf above a bed in a trailer. And I'd like to start by addressing an argument raised by the government in its response brief, that of the so-called single-purpose container exception that was first set forth by the Supreme Court in footnote 13 of Arkansas v. Sanders. Now, as I argued in the reply brief, the correct standard for the single-purpose container exception is that of a reasonable layperson, essentially whether a reasonable layperson would recognize the container as, or would know what was in the container simply by looking at it. It's not the standard of a reasonable police officer in light of training and experience in the surrounding circumstances. And I start here because since these briefings, the Ninth Circuit did issue a case authored by new Judge Gould, U.S. v. Gust, which I referenced in the 28J letter, that held exactly that, that it was a reasonable layperson standard. Now, Gust squarely rejected the argument that a person cannot have a legitimate expectation of privacy in a container that police officers would recognize as a gun case. And as Judge Gould's opinion pointed out, that was because the underlying justification for footnote 13 of Sanders was a reasonable expectation of privacy, which as we know from cats, is based on societal norms, what society would recognize as objectively reasonable. Now, in this case, there's absolutely nothing in the record below or in any of the arguments suggesting that a reasonable layperson, without the benefit of training and experience of law enforcement, would recognize the case in question here as a gun case. The only individuals who testified to recognizing the case were law enforcement officers. The case itself was very nondescript. It was described simply as a soft, soft-sided, triangular, zippered case, dark in color, with no other identifying markings. I think it was about a foot. Each side of the triangle was a foot. So I'd ask the court to compare this to the facts in Gust or the case. You're going to use your time. Judge Gould is an eloquent and informed judge, and his opinion is binding on this. Okay. It would be in any event. Maybe I could identify an issue of concern to me with the felon's case. I agree that if we get to the issue of whether it can come in under the single container doctrine that findings weren't made on that issue, there would have to be a remand. And it would be fair game for either side, I guess, to make their arguments in the district court. But the issue of concern to me is apparent authority. And here's my concern. When Mr. Boswell, who lives there, tells the policeman, I consent to your searching the container, does he have apparent authority to do that from the policeman's point of view? Prior to that, Mr. Boswell said, in response to a question, he did not know if a gun was in the container. If he had said, it's not my container, I don't know anything about it, then I think clearly he would have disclaimed any control over the container. But given the response, just is there a gun in the gun case? I don't know. What are we to make of that when he answers and when he lives there? That's my concern. Are we to equate his answer? He doesn't know if a gun is in the case with a statement that he denies ownership of the case? Or is it something different? I would submit first, yes, that no reasonable person would think that an individual who doesn't know if a container contains a firearm, I don't think a reasonable person would think that that individual has authority over that case. Now, that being said, what the Supreme Court said... He has an ex-convict living in his house? Well, at the time that Officer Graham seized this case, he knew that Mr. LaRue was not there. He'd been told by Mr. Boswell. I'm talking about Ruiz. He didn't know Ruiz was a felon at that point. Officer Graham testified when he seized the case, he testified that he didn't hear, he didn't remember or participate in the conversation that was going on between Mr. Ruiz and the other two officers. So at the time that he seized the case, he had no idea that Mr. Ruiz was a felon. But let's say there's a suitcase on a shelf in my house, and there's someone visiting my house, and they're sleeping in a room where the suitcase is, up on a shelf in the closet, and I give police consent to enter my house, and then they say, do you know what's in that suitcase? And I say, sure, search it. My statement, I don't know what's in it doesn't mean I'm denying control over it. In that case, I think that's true. But in a case where we're talking about a firearm, lack of knowledge about if there's a firearm in a case, I think demonstrates at the very least that it's ambiguous. Now, Illinois v. Rodriguez and the Ninth Circuit in both Welch and Deering also said that in addition to the reasonable belief standard of apparent authority, if there's no facts that suggest actual authority, officers are required at a minimum to make further inquiry. They're not permitted to proceed on an assumption of ignorance is bliss, essentially. And in this case, when Mr. Boswell said, I don't know if there's a firearm in that case, I think at the very least, Officer Graham was required to say, well, is it yours to inquire further? In fact, what he did was just say, can I look? And Illinois v. Rodriguez also stated that even if there's an explicit assertion of actual authority from the third party, there can still be surrounding circumstances that would lead a reasonable person not to believe that. And I would submit that by Mr. Boswell saying, I don't know what's in that case. He didn't even say that. He said, I don't know if there's a gun in there. I would submit that required Officer Graham before he asked for consent to actually inquire further. Let's assume the other question that I would have goes to the aftermath. They take the gun out. Let's suppose that was improper. But then they find out that Ruiz is a felon and they go back in and they search for the look in his jacket and they find the second gun. Why wouldn't that be permissible? Well, I think under Wong's son, if we assume that the initial seizure and search of the gun case was bad, that everything after that was fruits of the poisonous tree. How is this fruit? Well, the officer that arrested or that asked for consent to search Mr. Ruiz's jacket testified specifically that he did so because he saw that gun that Officer Graham had taken out of the case. Hadn't they run the, they ran a warrant check and a records check on him at that point and knew that he was a felon. They knew he was a convicted felon. They did. So you're saying that absent being aware of the gun, you would not have had any cause to go back in to the trailer to search for them? Well, I'm not sure that they wouldn't have, but the testimony was that the reason he asked for consent was because he saw that gun that Officer Graham had taken out of the case. Here's another reason he asked for consent was because Ruiz stated, frankly, that he was an ex-convict. Ruiz stated he was an ex-con and that he had just gotten off parole. And that may have been a reason. However, it wasn't the reason that was offered during the suppression motion. The reason offered was specifically, I saw that gun. I was concerned. So I went back in and asked what was in that, if I could search that jacket. Do I understand the facts correctly? Mr. Ruiz told one of the officers that he was an ex-convict before that gun was found in the gun case. And that officer went outside and did something and then a different officer is in there asking That's correct. It's a little unclear of the timing, but there were two, there were three officers there. Two of them were talking to Mr. Ruiz and when he informed them that he was an ex-con, the third one, Officer Graham, who actually seized the case, didn't participate in that conversation, didn't have any recollection of it. How do you deal with the argument that when the officer who's there when the questions about the gun case or purported gun case are being asked, when that officer, they treated it like a gun case, but so it might be a so what under gust because there's nothing in the record about how a lay person would view it. Correct. But when that officer is there and he asks Mr. Boswell, what's in the case? And he says, I don't know. And he says, can I search it? Boswell acts, you know, Boswell gives him an answer and doesn't say anything that would disclaim authority. So how do you deal? Yeah, you can answer the question. Well, I would, I would go back to Rodriguez at that point by Mr. Boswell saying, sure. And I would point out also that it wasn't a question of what's in the case. The question was, is there a gun in there? He said, I don't know. And when he says, sure, I think that's similar to the court in Deering where they had explicit assertion of authority, a person saying, I have authority over this case. And even in that, because of the surrounding circumstances, that officer was required to inquire further before he went ahead and searched that. And I say, because Mr. Boswell said, I don't know if there's a gun in there. At the very least, Officer Graham should have asked one more question. Is that your case? If Judge Fischer will indulge me in one final question, how's your analysis affected by the fact that, at least as I understand this, this shelf that the case is on is in a living room or a general room of the trailer of Boswell, where Boswell's been living for a long time. There is a guy sleeping beneath it, but still it's sort of like a shelf in Boswell's living room. It's sort of a living room slash bedroom. And Boswell himself is not the owner of that trailer either. He's just living there. But he's been a long term tenant. He's been there for about a year. But in Fultz and Welch and Davis, those cases, all three stand for the idea that the simple fact that you have authority over premises, over an area, does not equate to authority over containers within there. There needs to be some sort of persuasive evidence that suggests mutual use and joint access or control over that particular container. And in this case, we don't have that. The only thing we have is Boswell's, and I will grant this, Boswell had authority to grant consent over the entire trailer, but not the containers necessarily within there. We'll give you some time. I'll give you a minute. Thank you. May it please the court, Stephen Pfeiffer for the United States. Our primary argument is that this is a case of third party consent, both for actual and apparent authority. The same facts support both in this case. There was consent given by a long term resident, a permanent resident of the premises. He lived there for over a year. The area was the living room, and that's important. The Davis case separates kitchens and living rooms from bedrooms and other private rooms. Was that a trailer in Davis? No, that was a house or an apartment. Right. It wouldn't be likely to make a distinction, but when you're talking about a trailer, you're talking basically in the entire facility. So to draw some distinction, the principles still of Davis and Weiss and the other cases make it quite clear that authority to allow someone into a premises is not carte blanche in its entirety. And there were other occupants there, whether Ruiz was awake or asleep. He was another occupant there. That certainly put the police on notice that Boswell may not necessarily be authorized to give carte blanche to search anything. You still have to look at what the premises were. It was designated a living room. There was a kitchen. There was a bedroom. And living rooms, whether they're in trailers or homes or apartments or by virtue of the Davis case, it makes that distinction. And it wasn't something that was hidden under a bed, as occurred in one of the cases we have. It wasn't something hidden in the trunk. It wasn't a woman's purse, as in one of the cases. It was an item that was in plain view on a shelf, comparable to a situation if the police were invited into someone's regular residence in a living room, they know that that's either the homeowner or the permanent resident. And the resident, the police say, may I see something over there on that shelf? Well, let's suppose that instead of being a triangular police gun case, it was a, one of these aluminum computer carriers that is generic. It could be a computer inside. It could be a bunch of drugs. It could be a sniper rifle. It could be anything, but it was visualizing the aluminum cases. And so it's, and it's up on that shelf. You're suggesting that because it's not in the bedroom or concealed, that that's enough simply because of its location. And in being in plain view, that that dispenses with any inquiry under either parent authority or the injunct right to actual authority under Davis and that line of work? Well, it depends on all the circumstances, but I'm just trying to put this in the context of the ordinary resident of a home. And, and, and he was for all practical purposes, the primary resident here. He lived there for a year and you have to give that some recognition. If someone is, is there and it's their living room and their common area and the items are in open view, plain view for anybody to see, pardon me? Even though it's just an anonymous suitcase, right? I mean, but the police say, may I search this? And it's there in that, that area. I don't know what he said. He said, do you know if there's a, is there a gun in there? Right. And he says, I don't know. Right. This is the police asking and he has felons living there, but he's not likely to say, Oh yeah, there's a gun in there. Right. But then after that, he says, can I search it? Right. Right. And he gave unrestricted consent. Here's the question I've got for the government. And first of all, I'm sorry, I don't recall the status of gust, whether there's maybe a potential petition for the government pending or if they don't. Okay. So I'm assuming it's the law of the circuit. Right. So, and the findings were not made relating to what gust would require. To say it's a plain view gun case. In other words, at least that's the way I'm looking at it. It was all from the point of view of the officers. So what I'm wondering is on this other issue of apparent authority, is there any law in any of the circuits as to whether the owner of a home or a long-term tenant would have kind of a presumptive authority over containers within a common area? In other words, is the law that there ought to be presumptive authority to speak on giving consent for a search to a container in a living room of a home subject to there being evidence that someone said, I don't own it? Does the law require the person to give some indication that he affirmatively owns it? I don't think there's a blanket rule that would cover that. You'd have to look at each individual circumstance. If this had been a suitcase there with somebody else's name on it, obviously there would be no authority to consent to that. Or the lady's purse. I mean, men don't usually have authority to consent to women's purses. Let's say it was the metal case that Judge Fischer questions about. Like, could be a computer case, could just be holding anything else. If it's in the house of a homeowner, and it's in a living room, is there like a presumption that they can speak for it? I think that in that case, those very constrictive facts, which is what we have here, yes. If it were, say, a canister in the kitchen, on the kitchen counter, same thing, the kitchens are used by people who live there permanently. And that would have been the case here. Assuming there might be some presumptive control over it, when a person says they don't know what's in it, does that raise a question that requires a reasonable officer to ask more? Or is it neutral? Well, I think what's important here is the fact that he said, Boswell said, it had always been there, and he had been there for a whole year. So he's acknowledging the fact that he's had basically control over this item the entire time he's been there. It's been on the premises. But I don't think there's a requirement that he ask further questions at that point. You have to look at what's reasonable under the circumstances. Where's the evidence that Boswell said that the gun case had been there always, did you say? Yes, he testified to that. And that's another point. Did he tell the police officers? I don't think he told the police officer that. He testified to that. And that's relevant for actual authority, though. Right, but not for apparent authority. Not for apparent authority. Now, I did want to spend a little more time on the Gust case. This is very distinguishable from the Gust case. Your Honor's concerned about a finding. There was a finding. Judge Brown used the term gun case repeatedly, and the defense attorney used the gun case term 11 times. A late witness, Mr. Boswell, confirmed that it was a gun case. This wasn't just police testimony. Mr. Boswell said it was a gun case. It was never disputed it was a gun case. There was never an issue in this case that this was some other item other than a gun case. Unlike Gust, where you had a serious dispute there. In fact, that was the whole case, whether it was a gun case versus a guitar case or something else. And we didn't ever have that dispute here. This case centered during the suppression hearing on the issue of consent. Everybody took it for granted that it was a gun case. That's why the gun case was never introduced into evidence, because everybody knew what it was and referred to it as a gun case. So I don't think a remand is necessary to determine if the public would view this as a gun case when it was virtually, or was, agreed by everybody. Police, late witness, defense attorney, judge, everybody referred to it as a gun case. It'd be comparable. You know, I have to say, counsel, it wasn't focused on whether lay versus expert. The fact that they used that way of trademark infringement cases where it's in dispute, but at least the counsel and everybody was talking about the bag was the knockoff, because by then everybody knows that now it goes to some other issue of knowledge. So I really don't think that we can, if it comes to that, we should just assume because it was done at trial, when it wasn't the focus of anything, to say that the defendants hung out to dry because he didn't exercise his authority. Well, but it wasn't the focus of anything because it wasn't an issue. So everybody, and let me ask another question, because I think we haven't focused on the gun case issue. As soon as we get to the issue of exigent circumstances, why is there any argument under these circumstances that of the need to, under exigent circumstances, do anything more than take the reported gun case outside the issue of seizure? Yes. Right. Okay. I'm not saying that it would go as far as opening it. That's why the same. You're not arguing exigent circumstances would have justified opening the case. I don't, I don't think we would go that far. Right. If Judge Fischer will indulge me, I know your time's almost up. I have two related questions on the gun case still in my mind.  As to why it could be argued to be, or considered reasonable for the officer not to ask another question as appellate's counsel urges, you know, after he's told, I don't know what's, if there's a gun there. In other words, why is it reasonable in the government's view for the officer not to ask anything further and to. In this case, there's a safety concern. That was why he was interested in this case, because here he is in very cramped quarters, populated with people that they don't consider necessarily their friends with a felon living there. And they're interested in disarming the situation. And so I can see why they might just, you know, take the next step of just asking if they could open it. But I think to answer your question a little better, I'm not familiar with cases that require a certain litany or series of questions to be asked when the question is whether there was objectively reasonable facts to support apparent authority. They don't say you have to go through a certain list of questions to establish that it's based on the facts that are presented, in other words. Now, one final question that no one has asked about, and I've just wondered about it, it may not be relevant, but let me ask you, is it material or relevant that Mr. Ruiz was, at least as I'm understanding it, present when the officer was asking Boswell, can I search the case? Yeah, I think it's material. Ruiz did not, as far as I can tell from the record, that he did not object or make any statement saying he can't, Mr. Boswell can't speak for that case. Right. If he, if he objected, it would certainly be relevant and material to what we're doing here today. If Ruiz had objected. Was Ruiz awake when that? Oh yes. He was, he was talking to the other officers. He may not have heard what was going on. That's not in the record. Mr. Ruiz didn't testify. Does the, does the record tell us whether he was aware of this question? Can I search the case? Um, no, that's what I just said. He, he didn't testify, so we don't know what he was aware of and there's no indication he would have been aware of it. Good. Thank you. Just a few things very quickly. The, I would like to point out that, that I think Joe Fisher, you, you sort of suggested this, but because we're dealing with the trailer here, this wasn't just a common living area. In fact, it was the bedroom of the woman who owned the trailer. And the fact that it had always been there as he testified certainly suggests that it was somebody else's case. It wasn't his, he didn't bring it into, into the actual living room. Now, and also I think Fultz is on point on this. In, in Fultz, we had a garage with some cardboard boxes stored in it, not a trunk of a car, not secreted under somebody's bed in somebody else's bedroom. A garage is a common area used by all, by all people who own the house or who are living in the house as a storage area. And in Fultz they held that even though it's this common area, that there's no authority over the containers within that garage, even though the woman who owned the house certainly had authority to consent to a search of the premises. So I think Fultz is on point. As far as the way the government has distinguished these cases, that's fine. They pointed out some facts that aren't in the present case, but what they failed to do is put forth any persuasive evidence of mutual use and joint access or control. It's just not there. The simple fact of having authority over the premises is not a fact suggesting that. And, and in fact, there are facts here that suggest otherwise. Mr. Boswell saying, I don't know. The fact that Mr. Ruiz was in the apartment, the fact that the officers knew going in there that Anita McDowell lived there, that there were other people that lived in this trailer, I think suggests certainly that at the very least, again, the officer should have been required to inquire further before proceeding. Ms. McDowell, Anita McDowell, did she live there full time or just apart? She did live there full time. At, at that, that day, the testimony was she'd spent the night at a friend's house in St. John's the night before, but it was her trailer and she lived there. And normally she was sleeping in the bed that Mr. Ruiz was in and he was sleeping on the floor. Mr. Boswell would sleep in the back bedroom. All right. Thank you. Thank you counsel for the argument.
judges: Fisher, Gould, Bea